# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# SOUTHEASTERN DIVISION

| | |
|---|---|
| Michael Hunter, | ) |
|       Plaintiff, | ) **ORDER TO SHOW CAUSE AND** |
| | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| Lynn Jordheim, Jeffrey C. Clapper, Clare Hochhalter, Gary Annear, Kenneth Aldridge, Ralph Erickson, Unknown Named Sheriff of Cass County, Unknown Two Named US Marshals, Unknown Named Deputy Marshal, James Hill, Richard Henderson, Unknown Director of the United "Snakes" Bureau of Prisons, Clarance Thomas, | ) ) ) ) ) ) ) ) ) Case No. 3:14-cv-044 |
|       Defendants. | ) |

Judge Hovland has referred this matter to the undersigned for initial review as mandated by 28 U.S.C. § 1915A. Upon conducting the initial review pursuant to 28 U.S.C. § 1915A, it appears to the undersigned that plaintiff's application to proceed *in forma pauperis* was improvidently granted for the reasons set forth below. Consequently, the undersigned shall order plaintiff to show cause as to why the court should not vacate its order granting him leave to proceed *in forma pauperis* and deny his application. In the alternative, should the court be disinclined to vacate its order granting plaintiff's application to proceed *in forma pauperis*, the undersigned recommends that the above-entitled action be dismissed with prejudice and that this dismissal count as a strike for PLRA purposes.

1

I.   **BACKGROUND**

   A.   **Procedural History**

The plaintiff, Michael Hunter, formerly known as Herbert Roy Mathis, Jr. (hereinafter referred to as "Hunter"), initiated the above-captioned Bivens action on April 17, 2014, with the submission of an application to proceed *in forma pauperis*, a proposed complaint, motions for a temporary restraining order and preliminary injunction, and a "Motion to Declare 28 U.S.C. § 1915(a) Unconstitutional." On May 12, 2014, he filed a motion seeking leave to amend his complaint along with a proposed amended complaint. On May 13, 2014, the court granted his application to proceed *in forma pauperis* as well as his motion for leave to file an amended complaint and instructed the Clerk's Office to file both his original and amended complaints.

On May 22, 2014, Hunter filed an "Ex Parte Motion for Injunction and for Hearing and Production." On June 9, 2014, he filed a "Motion to Appoint Counsel and Order Service and Order a Judge/Liberal Appointed." He also filed a "Motion to Assign a Out of District Liberal Judge."

On June 10, 2014, Chief Judge Erickson issued an order of recusal and reassigned this case to Judge Hovland, who in turn referred this matter to the undersigned for preliminary consideration.

On June 16, 2014, Hunter filed a "Motion to Consent and for Orders for Writ, Hearing and Injunction, Appoint Counsel." He also filed a "Renewed Petition for Writ of Mandamus."

   B.   **Hunter's Complaint**

Hunter complains that Justice Clarence Thomas "did knowingly lie by omission facts and/or false statements in direct violation of 18 USC Section 1000 to US Senators in 1980s to get placed on the bench in the US Supreme Court because Thomas objective was to rewrite the Constitution meeting his hidden agenda." (Docket No. 13) (errors in original). On a more personal note, he

2

asserts that current and former Assistant United States Attorneys acted in bad faith when prosecuting him for various violations of federal law in 1980, 1984, 1992, 2002, and 2013[1] and that the resulting convictions were invalid.

With respect to his 2013 prosecution, Hunter further asserts that communication giving rise to the charge against him was protected speech under the First Amendment and that the guilty plea he eventually entered to the charge was invalid.[2] He also asserts that he was denied meaningful access to the courts while being held at the Cass County Jail in 2013 awaiting final disposition of this charge and that the United States Marshal destroyed all of his "legal papers," effectively

---

[1] Hunter was convicted in 1980 for interstate transportation of stolen back checks violations of 18 U.S.C. § 2314. See Hunter v. James Hill, et. al., Case No. 1:04-cr-030, at Doc. No. 2. Defendant James Hill prosecuted case for the Government.

Hunter was convicted in May 1984 of one count of interstate transportation of stolen checks in violation of 18 U.S.C. § 2314. See United States v. Mathis, Case No. C3-83-56. Defendant Gary Annear prosecuted the case for the Government.

Judge Paul Benson summarily dismissed a Bivens action filed by Hunter in May 1992 against Annear, Jordheim, Aldridge, and others on the grounds that it was frivolous and malicious. See Hunter v. Annear, et. al., 3:92-cv-079 at Doc. Nos. 1 and 2. Hunter asserts in his instant complaint that Defendant Lynn Jordheim, working in concert with Defendant Kenneth Aldridge, a special agent with the Federal Bureau of Investigations, ginned up charges against Hunter in 1992 in retaliation for a complaint Hunter had filed against Defendant Gary Annear. (Docket No. 13). Notably, there does not appear to be any record of federal criminal charges being filed against Hunter in the District of North Dakota in 1992.

Hunter was charged in October 2001 with the offense of bank robbery by force or violence in violation of 18 U.S.C. § 2113A. See United States v. Hunter, Case No. 1:01-cr-055, at Doc. Nos. 1 and 16. Defendant Clare Hochalter prosecuted this case for the Government. In March 2002, the court ordered that Hunter be committed to an out-of-district treatment facility pursuant to 18 U.S.C. § 4244(d). See id. at Doc. Nos. 57-58. In July 2002, Hunter was discharged from the treatment facility pursuant to 18 U.S.C. § 4244(e) and returned to this district for further proceedings. See id. at Doc. No. 66. He entered a guilty plea and on September 19, 2002, and was sentenced to a term of 24 months imprisonment with credit for time served. See id. at Doc. Nos. 84-85.

Hunter was charged in June 2013 with mailing a threatening communication in violation of 18 U.S.C. § 876(c). See United States v. Hunter, Case No. 3:13-cr-042, at Doc. Nos. 1 and 2. Defendant Jeffrey Clapper handled the case for the Government. On August 27, 2013, Hunter entered a plea of guilty, which the court conditionally accepted. See id. at Doc. No. 108. On November 1, 2013, the court convened a competency hearing. See id. at Doc. No. 138. Finding Hunter competent, the court proceeded with sentencing and imposed a term of imprisonment of 30 months. See id.

[2] The premise of Hunter's argument appears to be that the communication he mailed cannot be considered threatening as it was addressed to District Court Judge Rodney Webb, deceased. However, in making this argument, he neglects to mention that the indictment charged him with threatening the persons of Judge Webb along with Assistant United States Attorneys Clare Hochhalter, Gary Annear, and Lynn Jordheim. See United States v. Hunter, Case No. 3:13-cr-042, at Doc. No. 2.

preventing him from appealing his conviction. Finally, he asserts that Defendant Clapper, the Assistant United States Attorney assigned to this matter, acted outside the scope of his authority and conspired with his colleagues to submit perjured testimony, that his court-appointed standby counsel, Defendant Richard Henderson, assisted the prosecution by refusing to file a motion requesting psychological examinations of Defendants Jordheim and Hochhalter, and that Judge Erickson acted with deliberate indifference to his safety at sentencing[3] when he "ordered plaintiff in custody of defendant BOP . . . knowing full well that the director of the BOP purposefully endangers the life, safety, and well being of plaintiff wherein BOP prisons are fraught with countless stabbings, murders, rapes, assaults and other criminality such as rampant smuggling and use of illegal drugs and made alcohol, that increase risk of death or other violence." (Docket No. 13) (errors in original).

Finally, Hunter takes issue with the federal Bureau of Prisons ("BOP"), averring that its director, "by his own policy, provides no meaningful mental health care and treatment, no vocational or educational rehabilitation which . . . increases violence . . . and . . . places prisoners in overcrowded prisons." (Id.).

In his prayer for relief, Hunter requests an award of $100 million in compensatory damages and $50 million in punitive damages. He also asks the court to "issue a TRO and preliminary injunction barring defendants, their agents, actors and employees from housing plaintiff in dangerous unconstitutional prisons." (Id.)

---

[3] Judge Erickson made the following recommendation to the BOP in the Judgment he issued in Case No. 3:13-cr-042: "That the defendant receive treatment for his mental health condition, which is significant, and if possible that he be placed at the Medical Center in Rochester, MN to receive this treatment." United States v. Hunter, Case No. 3:13-cr-042 at Doc. No. 139.

4

## II. GOVERNING LAW

### A. PLRA's § 1915A Screening Requirement

Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA") to address the burden imposed by prisoner suits that are too often frivolous and without merit. Jones v. Bock, 549 U.S. 199, 203-04 (2007); Woodford v. Ngo, 548 U.S. 81, 84 (2006). One of the reforms enacted as part of the PLRA for cases in which prisoners are seeking to sue a governmental entity, officer, or employee requires courts to conduct an early screening to weed out claims that clearly lack merit. 28 U.S.C. § 1915A. In conducting the screening, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. Id.

In enacting the PLRA, Congress did not impose a heightened pleading requirement for prisoner complaints, and, in this case, Bivens does not impose any such requirement. Cf. Jones, 549 U.S. at 203-04. Consequently, to state a cognizable claim, the complaint need only meet the minimal requirements of Fed. R. Civ. P. 8(a)(2) that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007). In addition, when a prisoner is proceeding *pro se*, the court must construe the complaint liberally and hold it to a less stringent standard than would be required of an attorney. Id. at 94.

To meet the minimal requirements of Rule 8(a)(2) for pleading a cognizable claim, more is required than simply expressing a desire for relief and declaring an entitlement to it. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic, 550 U.S. at 570). A complaint fails to meet this

5

minimal pleading standard if it contains nothing more than "labels and conclusions, " "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft, 556 U.S. at 678 (quoting Bell Atlantic, 550 U.S. at 555, 557).

To state a cognizable Bivens claim, the plaintiff must allege a violation of a right secured by the Constitution or the laws of the United States and that the violation was committed by a person acting under color of state law. Cf. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157 (8th Cir. 1997). The pleading must also allege a sufficient causal link between the alleged violation and the basis upon which the particular defendant is to be held responsible, keeping in mind that persons sued in their individual capacities must be personally involved or directly responsible since "the doctrine of *respondeat superior* liability does not extend to claims founded on Bivens." Solliday v. Director of Bureau of Prisons, Civil No. 11–2350, 2012 WL 3839340, at * 2 (D. Minn. July 27, 2012) (citing (Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995)).

### B. PLRA's "three strikes" provision

The PLRA contains what is commonly referred to as the "three strikes" provision, codified at 28 U.S.C. § 1915(g). This provision effectively bars a prisoner from filing a civil action or appealing a judgment in a civil action *in forma pauperis* if, on three or more prior occasions, he filed an action or appeal that was dismissed on the grounds that it was frivolous, malicious, or failed to state a claim. See 28 U.S.C. § 1915(g); see also Jackson v. Auburn Correctional Facility, Nos. 9:07-CV-0651 and 9:07-CV-0659, 2009 WL 1663986, at *3 (N.D.N.Y. June 15, 2009) (Peebles, M.J) ("The manifest intent of Congress in enacting this 'three strikes' provision was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates.").

It does make an exception, however, in instances when the prisoner is under imminent danger of serious physical injury. See 28 U.S.C. § 1915(g). "The Court may sua sponte raise the three strikes provision of the PLRA on its own initiative." McCreary v. Cox, No. 07-11478, 2007 WL 2050268, at *1 (E.D. Mich. 2007).

### III. DISCUSSION

**A.  Hunter's application to proceed *in forma pauperis* was improvidently granted because he is subject to the PLRA's "three strikes" provision**

The following civil rights actions filed by Hunter in this district have been dismissed on the grounds they were frivolous, malicious, and/or based on an indisputable and meritless legal theory:

- Hunter v. Annear, Jordheim, Wefald, Aldridge, and Wood, Case No. 3:92-cv-79: Hunter initiated this civil rights action *in forma pauperis* on May 18, 1992, pursuant to 28 U.S.C. § 1343. Judge Paul Benson summarily dismissed the action on the grounds that the complaint was complaint was frivolous and malicious.

- Hunter v. Rudnick, et. al., Case No. 3:94-cv-016: Hunter initiated this civil rights action *in forma pauperis* on February 14, 1994, pursuant to 42 U.S.C. § 1983. Judge Rodney Webb summarily dismissed the action on the grounds that the complaint was frivolous.

- Hunter v. Hill, et. al., Case No. 1:04-cv-030: Hunter initiated this Bivens action *in forma pauperis* on March 29, 2004. Judge Daniel Hovland summarily dismissed this action on the grounds that the claims as set forth in Hunter's complaint were based on an indisputable, meritless legal theory.

Since Case Nos. 3: 92-cv-79 and 3:94-16 were dismissed because they were frivolous, they count as strike for purposes of § 1915(g). E.g., Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003). Further, they may be counted even though the dismissals were prior to the adoption of the

7

"three strikes" provision in 1996. See Welch v. Galie, 207 F.3d 130, 132 (2d Cir. 2000) (holding that "pre- § 1915(g) dismissals for frivolousness, maliciousness, or failure to state a claim count as 'strikes' for purposes of § 1915(g)"); see also Wilson v. Yaklich, 148 F.3d 596, 603 (6th Cir. 1998) (holding that "dismissals of previous actions entered prior to the effective date of the PLRA may be counted toward the 'three strikes' referred to in 28 U.S.C. § 1915(g)"); Adepegba v. Hammons, 103 F.3d 383, 388 (5th Cir. 1996) (applying the "three strikes" provision to pre-PLRA district court dismissal of § 1983 action as frivolous); Tierney v. Kupers, 128 F.3d 1310, 1311 (9th Cir. 1997) (opining that application of § 1915(g) raises no retroactivity concerns). Keener v. Penn. Bd. Of Probation & Parole, 128 F.3d 143, 145 (3d. Cir. 1997) (holding that "dismissals for frivolousness prior to the passage of the PLRA are included among the three that establish the threshold for requiring a prisoner to pay the full docket fees"); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1025 (7th Cir. 1996) ("Application of [the PLRA] is not impermissibly retroactive . . . . All § 1915 has ever done is excuse pre-payment of the docket fees; a litigant remains liable for them, and for other costs, although poverty may make collection impossible." (internal citation omitted)); Green v. Nottingham, 90 F.3d 415, 420 (10th Cir. 1996) ("Application of § 1915(g) to prisoner suits dismissed prior to the statute's enactment thus does not raise concerns of statutory retroactivity because the provision does not have a "retroactive effect." Because the plain language of § 1915(g) strongly suggests that Congress intended courts to consider prisoner suits dismissed prior to the statute's enactment, and applying this procedural rule in such a manner would not have a retroactive effect, we conclude that § 1915(g) requires us to consider prisoner suits dismissed prior to the statute's enactment.").

Case No. 1:04-cv-030 also counts as a strike, giving Hunter at least three strikes in this district alone. E.g., Orr v. Clements, 688 F.3d 463, 465 (8th Cir. 2012) (dismissal for failure to state a claim counts as a strike even if the dismissal was without prejudice); Nguon v. Virga, No. CIV S–10–2421, 2010 WL 48323823, at * 1 (E.D. Cal. Nov. 22, 2010) (concluding that the dismissal of a prisoner's claim predicated upon a meritless legal theory may constitute a "strike" under the PLRA).

Hunter has also accumulated at least one strike outside the District of North Dakota as evinced by the Western District of Washington holding in Hunter v. Johnson, No. CV-09-342-CI, 2009 WL 5208797, at *1 (E.D. Wash. Dec. 21, 2009) (Report and Recommendation, adopted) ("Court records from the Western District of Washington and the Southeastern District of North Dakota indicate at least three of Mr. Hunter's prior cases have been dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. See 90–CV–00616–JCC (Western District of Washington, Ct. Rec. 7, Bar Order acknowledging "the large number of frivolous and/or malicious filings"); 92–CV–00079–PB (North Dakota, Ct. Rec. 2, dismissed as frivolous and malicious); and 94–CV–00016–RSW (North Dakota Ct. Rec. 8, dismissed as frivolous)."). There, Hunter sought leave to initiate a civil rights action *in forma pauperis*. The court denied his application, opining:

> Under the Prison Litigation Reform Act of 1995, a prisoner may not proceed in forma pauperis if he has, on three or more prior occasions, while incarcerated, brought an action in federal court that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, unless the prisoner is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g). This court finds Mr. Hunter had three prior actions dismissed as such, and he does not allege that he is in imminent danger of serious physical harm.

Id. (rejecting Hunter's assertion that the application of § 1915(g) was unconstitutional).

In summary, it is clear that Hunter had accumulated more than three strikes prior to the initiation of this action. As there was nothing in his instant complaint from which the court could infer he is under imminent danger of serious physical injury, his request to proceed *in forma pauperis* should have been denied.

> B. **In the Alternative, Hunter's Instant Complaint Should Be Summarily Dismissed**
>
> > 1. **Hunter's Claims Against Defendants Hill, Annear, Jordheim, Hochhalter, and Clapper**

The United States Supreme Court, in Heck v. Humphrey, held that before an inmate can recover damages under § 1983 for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, he "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a write of habeas corpus, 28 U.S.C. § 2254." 512 U.S. 477, 486-87 (1994). It added:

> A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed proceed, in the absence of some other bar to the suit.

Id. at 487. It is well settled that these principles apply with equal force to Bivens actions. See e.g., Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms, 452 F.3d 433, 460 (6th Cir. 2006) ("Heck's litigation bar applies with equal force to Bivens actions."), *cert. denied*,

549 U.S. 1321 (2007); Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995) (holding that Heck applies equally to Bivens actions by federal prisoners).

Hunter's claims for damages against the Assistant United States Attorneys past and present–Defendants Hill, Annear, Jordheim, Hochhalter, and Clapper–bear upon convictions and sentences that have not been invalidated. As a consequence, they are Heck-barred.[4] In the Eighth Circuit, the Heck bar continues even as to the convictions for which the plaintiff may no longer be incarcerated or otherwise subject to restraints on his or her freedom. Entzi v. Redmann, 485 F.3d 998, 1003 (8th Cir. 2007); Beaulieu v. Preece, No. 14–552, 2014 WL 1338791, at *3 n.2 (D. Minn. Apr. 3, 2014); Clark v. McLean County, No. 1:08–cv–75, 2008 WL 5236036, at *10 (D.N.D. Dec. 15, 2008).

> 2. **Hunter's Claims Against Unknown Named Sheriff of Cass County, Unknown Two Named US Marshals, and Unknown Named Deputy Marshal**

Hunter's claims that he was denied meaningful court access while in custody awaiting final disposition of his 2013 case and was prevented from appealing his eventual conviction are frivolous on their face.

The record evinces that Hunter repeatedly accessed the courts during the pendency of his 2013 case and was able to file a notice of appeal following the entry of the judgment of conviction. Specifically, the record reflects that Hunter inundated the court with *pro se* motions, responses,

---

[4]As an aside, it should also be noted that release is not a viable remedy available in a Bivens action. When a prisoner challenges the very fact or duration of his physical imprisonment and the relief sought is a determination that he is entitled to immediate release or a speedier release from that imprisonment, the inmate's federal remedy is by way of a writ of habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (habeas corpus is the exclusive remedy for prisoners attacking the validity of their conviction or confinement). When Hunter initiated this action, he simultaneously filed a Motion to Vacate the Judgment of Conviction and Sentence in Case No. 3:13-cr-042 pursuant to 28 U.S.C. § 2255.

11

notices, objections, appeals, affidavits, and *ex parte* correspondence.  See e.g., United States v. Hunter, Case No. 3:13-cv-042, Doc. Nos. 9, 17, 27-28, 35-38, 45-74, 76-85, 87-88, 91- 92, 106, 115-120, 125-129, and 142.  The court appointed him standby counsel, who also filed several motions on his behalf, and convened multiple status conferences to address issues raised in his *pro se* filings and otherwise discuss the status of his case.  Shortly after the judgment of conviction was entered, standby counsel filed a Notice of Appeal on Hunter's behalf.  Hunter also filed a notice of appeal *pro se* as evinced by the following note entered by the Clerk's Office on the docket sheet:

> Appeal Remark as to Michael Howard Hunter re . . . Notice of Appeal: The appeal . . . was filed by FPD.  On [November 18, 2013], the defendant (acting in pro se status) mailed the Clerk's Office a pleading entitled "Notice of Appeal and Motion to Appoint New Counsel."  Per direction from the Court of Appeals, this pleading as been forward[ed] to the Court of Appeals, St. Paul Office for processing by their court.

As the record clearly belies Hunter's assertion that he was denied meaningful access to the court and prevented from appealing his conviction for mailing a threatening communication, his claims against the unknown Cass County Sheriff, two unknown United States Marshals, and the unknown United States Deputy Marshal should be summarily dismissed.

### 3. Hunter's Claim Against Unknown Director of the United "Snakes" Bureau of Prisons

Hunter claims that he is in "imminent peril by the term of imprisonment in BOP custody." Notably, he does not identify any particular hardships that he has encountered while incarcerated or otherwise elaborate on the conditions of his confinement.  Rather, he simply avers that BOP facilities are inherently dangerous and generally lacking when it comes to the provision of medical and rehabilitative services.  In so doing, he takes the position that incarceration in any federal facility constitutes cruel and unusual punishment.

12

Hunter's claims fail regardless of whose custody he is in as his complaint is entirely devoid of any allegations of any mistreatment, deprivations, or denials of treatment and/or services. His broad, conclusory assertion that incarceration in any federal correctional facility constitutes cruel and unusual punishment does not constitute the basis of a cognizable constitutional claim

Moreover, it does not appear at this point that the BOP has taken custody of Hunter. Prior to appearing in this district in 2013 on the charge of mailing a threatening communication, Hunter was incarcerated at the New Castle Correctional Facility, in New Castle, Indiana, where he was serving a state sentence. His appearance in this district was secured through the issuance of a writ of habeas corpus *ad prosequendum*. At the conclusion of the proceedings in this district,[5] he was returned to the New Castle Correctional Facility to finish serving his state sentence. In May 2014, he contacted the Clerk's Office to advise that he was now residing at the Henderson County Detention Center, Henderson, Kentucky. On June 16, 2014, the court received correspondence from Hunter in which he listed a PO Box in Henderson, Kentucky, as his return address. A search of the BOP's online inmate finder confirms that, as of June 23, 2014, he has yet to be handed over to the BOP. The United States Marshal has also advised the court that Hunter is presently awaiting designation to the BOP facility.

### 4. Hunter's Claims Against Richard Henderson, Kenneth Aldridge, Judge Erickson and Justice Clarence Thomas

Hunter's claims against Defendants Henderson, Erickson, and Thomas are frivolous on their face. Hunter's claim against Aldridge is not only frivolous, but borders on the fantastic and delusional. Consequently, the claims against all four of these defendants should be dismissed.

---

[5]As mentioned previously, Hunter was ultimately convicted of this offense.

## IV. ORDER AND RECOMMENDATION

Based on the foregoing, the undersigned **ORDERS** that Hunter shall have fourteen (14) days to show cause in writing why this court's prior order granting him leave to proceed *in forma pauperis* should not be vacated as improvidently granted and why leave to proceed *in forma pauperis* should not be denied based on his having accumulated three or more strikes pursuant to the "three strikes" provisions in 28 U.S.C. § 1915(g). Hunter is advised that the failure to show good cause may result in the court taking the recommended action set forth below.

In addition, the undersigned **RECOMMENDS** the following:

1. If Hunter fails to show good cause for why the court's prior order granting leave to proceed *in forma pauperis* should not have been granted, the court should:

   a. vacate its order granting Hunter leave to proceed *in forma pauperis* (Doc. No. 4) and deny his application to proceed *in forma pauperis*; and

   b. dismiss the above-entitled action without prejudice if Hunter does not pay the filing fee within thirty (30) days.

2. In the alternative, the court should:

   a. deem as **MOOT** Hunter's "Motion for Issuance of Temporary Restraining Order and Issue Preliminary Injunction after Hearing" (Docket No. 2), "Motion to Declare 28 U.S.C. 1915(a) Unconstitutional" (Docket No. 4), "Motion for an Immediate Hearing, to Issue a Temporary Restraining Order, Preliminary Injunction and Issue Writ for Production" (Docket No. 6), "Ex Parte Motion for Injunction and for Hearing and Production" (Docket No. 17), "Motion to Appoint Counsel and Order Service and Order a

14

Judge/Liberal Appointed" (Docket No. 21), "Motion to Assign a Out of District Liberal Judge" (Docket No. 22), "Motion to Consent and for Orders for Writ, Hearing and Injunction, Appoint Counsel" (Docket No. 24), and "Renewed Petition for Writ of Mandamus" (Docket No. 26); and

    b.    **DISMISS** the above-entitled action with prejudice; and

    c.    deem the dismissal of the above-entitled action as a strike for purposes of the PLRA.

## V.   NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 25th day of June, 2014.

                              */s/ Charles S. Miller, Jr.*
                              Charles S. Miller, Jr., Magistrate Judge
                              United States District Court